**SOUTHERN FARM BUREAU CASUALTY INSURANCE CO., Appellant,**

v.

**James R. ADAMS et al., Appellees.**

**No. 1318.**

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1978.

Rehearing Denied Sept. 21, 1978.

William A. Abernethy, Meredith, Donnell & Edmonds, Corpus Christi, for appellant.

William G. Burnett, Burnett & Burnett, Sinton, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for declaratory judgment. Suit was brought by James R. Adams and Donald G. Adams, hereinafter called "plaintiffs", against Southern Farm Bureau Casualty Insurance Company, hereinafter called "defendant", to determine whether or not defendant, under an existing insurance policy, had the duty to defend plaintiffs in an action brought against them by a third person. Both parties filed motions for summary judgment. Plaintiffs' motion was granted and defendant's motion was denied. Judgment was rendered which decreed that defendant was required to defend plaintiffs in the suit brought against them. Defendant has appealed.

Defendant issued a "Farmer's Comprehensive Personal Insurance" policy to plaintiffs on February 17, 1974, wherein it contracted to pay on behalf of plaintiffs all sums which plaintiffs shall become legally obligated to pay as damages because of bodily injury caused by an occurrence during the policy period, and further contracted with plaintiffs to defend any suit against them by a third person where a recovery is sought against them because of bodily injury allegedly sustained by such a person.

The policy had numerous exclusions from coverage, including among others:

"This coverage does not apply:

\*　　\*　　\*　　\*　　\*　　\*

(c) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1) any aircraft;

\* \* \* \* \* \*

(n) to property damage arising out of any substance released or discharged from any aircraft . . ."

On March 26, 1976, Michael Hedke filed a suit in San Patricio County, Texas. It was docketed as Cause No. 18077 and was styled *"MILTON HEDKE VS. GREENWAY AVIATION CO., ET AL."* Greenway Aviation Company and the plaintiffs in this suit were named as defendants in the *Hedke* suit. Hedke alleged that the defendants in that suit were negligent in the use and distribution of chemical spray, which proximately caused him to suffer bodily injuries and medical expenses in an amount in excess of $10,000.00. With respect to the allegations in Hedke's petition which bear on the disposition of this appeal, it was alleged:

"II.

The Plaintiff shows that on or about the 19th day of July, 1974, he was engaged in performing work as a gauger for his employer and was on a public road a few miles east of Mathis in route to one of the wells that he was employed to gauge and operate when an airplane, so Plaintiff is informed and believes, piloted by Buster Boyd and owned by Greenway Aviation Company, doing work on behalf of Adams Brothers, sprayed his pickup truck and covered the Plaintiff with the wet spray which Plaintiff is informed and believes was a methyl parathion mixture intended to be used on the cotton crops of the Adams Brothers' farming operations. That the immediate effect of the spray was to cause immediate tearing of the eyes, difficulty in breathing and swelling. Since being heavily sprayed with the chemical, the Plaintiff has been under the constant care of a doctor, has been on medication, has had continuous sense of nervousness and a sense of anxiety and unrest and it now appears that he has suffered permanent damage to his body, nerves and tissues, by reason of this heavy dosage of chemical spray."

Plaintiffs, upon service of citation in the *Hedke* suit upon them, requested defendant to defend them against the claim for damages sought by Hedke. Defendant refused to do so on the ground that the policy excluded coverage under the facts alleged by Hedke in his petition. Plaintiffs then filed this lawsuit.

Defendant attacks the judgment of the court below in three points of error. It is contended in the first and second points that the trial court erred in rendering summary judgment for plaintiffs because, as a matter of law: 1) the allegations contained in Hedke's petition in Cause No. 18077 do not show that defendant has a duty to defend plaintiffs in that action; 2) coverage is expressly excluded in the policy for the cause of action instituted by Hedke against plaintiffs. In the third point, it is asserted that the trial court erred in failing to render summary judgment in favor of it (defendant) because the Hedke petition in Cause No. 18077 fails to fall within the coverage provided by the insurance policy in question.

The sole question to be determined in this appeal is one of law, being the construction of the phrase "arising out of the . . . use . . . of . . . any aircraft." It is the defendant's position that such phrase, properly construed, means that the exclusion can be invoked without the plaintiffs personally using any aircraft; and that plaintiffs, by having Greenway Aviation Company spray their crops with an aircraft, used such aircraft within the meaning of the word "use" as contained in the exclusionary clause. It is plaintiffs' position that such phrase, properly construed, means that the exclusion becomes operative only where they (plaintiffs) personally owned, maintained, operated, used, loaded or unloaded an aircraft which resulted in bodily injury to a third person; and that where they did not personally own, maintain, operate, use, load or unload the aircraft, although bodily injury may have occurred out of the use of the aircraft, the exclusion does not apply.

It is stipulated that at the time of Hedke's alleged injuries, plaintiffs were insured by a policy which was duly issued by defendant. Other summary judgment evidence, consisting of admissions, deposition and affidavits, established conclusively: the premium for the policy year February 17, 1974 to February 17, 1975 had been paid; the policy was in force on July 19, 1974, when Hedke alleged that he sustained bodily injury as a result of the chemical spraying of plaintiffs' crops by Greenway Aviation Co.; timely notice of Hedke's suit was given by plaintiffs to defendant; applicable policy limits had not been exceeded by payments by defendant on March 26, 1976, when Hedke filed his suit; and Greenway Aviation Co., the owner of the airplane that sprayed Hedke, was an independent contractor who had contracted with plaintiffs for the spraying of their crops.

When terms of an insurance policy are unambiguous, they are to be given their plain, ordinary and generally accepted meaning, unless the policy itself shows that the terms have been used in a different sense. *Gallup v. St. Paul Insurance Company*, 515 S.W.2d 249 (Tex.Sup.1974); *Southern Life and Health Ins. Co. v. Simon*, 416 S.W.2d 793 (Tex.Sup.1967). Generally speaking, all parts of an insurance policy are to be taken together, and the meaning of the terms used therein will be given as will carry out and effectuate to the fullest extent the intention of the parties, since each word in the particular phrase in question is intended to have a meaning in and of itself. *Royal Indemnity Company v. Marshall*, 388 S.W.2d 176 (Tex.Sup.1965).

The word "use" has been construed to mean "to put or bring into action or service; to employ for or apply to a given purpose; to avail oneself of". *Beggs v. Texas Department of Mental Health and Mental Retardation*, 496 S.W.2d 252 (Tex.Civ.App.—San Antonio 1973, writ ref'd); *Jackson v. City of Corpus Christi*, 484 S.W.2d 806 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). The word "use" was not defined in the policy upon which plaintiffs sue.

It is a well settled rule of law in this State that insurance policies will be interpreted and construed favorably in favor of the insured and strictly against the insurer, especially so when dealing with exclusions, exceptions and limitations. *Providence Washington Ins. Co. v. Proffitt*, 150 Tex. 207, 239 S.W.2d 379 (1951). It is equally well settled that when the language of an insurance policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured in order to permit a recovery under the policy. *Continental Cas. Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762 (1953); *Lloyds Casualty Insurer v. McCrary*, 149 Tex. 172, 229 S.W.2d 605 (1950). Further, since the purpose of an insurance contract is to indemnify against loss the contract (policy) should be construed in such a way as to effectuate that purpose, rather than in a way which will defeat it; therefore, the courts favor a strict construction of the policy against the company writing the policy, and particularly of provisions that tend to defeat coverage, such as exclusionary clauses. *National Emblem Insurance Company v. McClendon*, 481 S.W.2d 186 (Tex. Civ.App.—Texarkana 1972, writ ref'd n. r. e.); *Commercial Standard Insurance Company v. Ford*, 400 S.W.2d 934 (Tex.Civ.App. —Amarillo 1966, writ ref'd n. r. e.); *Travelers Indemnity Company v. Storecraft, Inc.*, 491 S.W.2d 745 (Tex.Civ.App.—Corpus Christi 1973, no writ).

In *Ramsay v. Maryland American General Insurance Company*, 533 S.W.2d 344 (Tex.Sup.1976), the question to be resolved was whether the term "commercial automobile" as used in an exclusionary clause of an insurance policy, excluded recovery for the death of the insured where death resulted while the insured, a civil service employee, was operating a Navy-owned pickup truck. Our Supreme Court held that it did not, and permitted a recovery under the policy. The plaintiff in that case, who was the insured's widow, contended that the term was so ambiguous that she should recover under the rule of law which resolves such ambiguities in favor of the insured. The Supreme Court agreed, and, on page 349, held:

"We have concluded that both parties have offered reasonable, although conflicting, interpretations of the meaning of 'commercial automobile' as applied to the facts and circumstances of this case. The term is not ambiguous when applied to a truck or automobile in actual use by a private individual or company for profit, but uncertainty and ambiguity arise when the term is applied to a Navy-owned truck used exclusively for non-profit activities of the United States Government. . . ."

■ Since the policy here involved is a policy of "Farmer's Comprehensive Personal Insurance", it is reasonable to conclude that it was purchased and sold to afford comprehensive insurance coverage against liability of the insureds in their farming business, and that the exclusion was inserted in the policy to exclude from coverage liability arising out of personal use by them of aircraft, since the policy was designated to afford coverage for liability arising out of farming operations as opposed to liability arising from personal pursuits of the insureds. This view is supported by the decision in *Heyward v. Republic Nat. Life Ins. Co.*, 527 S.W.2d 807 (Tex.Civ.App.—San Antonio 1975), affirmed in 536 S.W.2d 549 (Tex.Sup.1976). There, Heyward had a policy of accidental death insurance which had an exclusion that provided that benefits would

"...  not be payable for any loss to which a contributing cause is

.  .  .  (e) participation in or as the result of the commission of a felonious act . . ."

Heyward was murdered, the company denied coverage, and Heyward's widow sued. The insurance company contended that since Heyward was intentionally killed by another that he died as the result of a felonious act and the exclusion barred recovery. The Court of Civil Appeals held at 527 S.W.2d 812:

"...  We do not agree. That the slayer is participating in or committing a felonious act is not enough; in order for such exclusion to be applicable, the insured must be participating in or committing a felonious act  .  .  ."

The Supreme Court agreed.

The rule of *Heyward*, that exclusions should be construed to speak to acts of an insured, and not to acts of third parties, would dictate that the exclusion in the policy in question in this appeal should be construed to mean that plaintiffs (or their employees) must have personally used the airplane in question in order for the exclusion to exempt defendant from liability to defend plaintiffs in the *Hedke* suit.

■ Moreover, if exclusion (c) is construed as contended, that is, that bodily injury or property damage arising out of the use of an aircraft is excluded from coverage regardless of whether an insured or third party is personally using the aircraft, then exclusion (n) is rendered meaningless, for everything intended to be excluded by exclusion (n) would have been already excluded by exclusion (c). This, of course, is an impermissible interpretation. See *Liberty Mutual Insurance Company v. American Employers Insurance Company*, 556 S.W.2d 242 (Tex.Sup.1977). However, the construction contended for by plaintiffs (the insureds) reconciles these two exclusions—exclusion (n) means that there is no coverage for *property damage* arising from aerial spraying, but exclusion (c) means there is coverage for *bodily injury* arising from aerial spraying at least when performed, as here, by an independent contractor.

A result similar to that contended for by plaintiffs is reached by employing the familiar rule of construction that the specific controls the general. Exclusion (c) is general; exclusion (n) is specific as regards aerial spraying. Applying exclusion (n) to aerial spraying, to which it is obviously intended, we arrive at a construction that bodily injury from aerial spraying is covered and *property damage* from aerial spraying is excluded from coverage by the policy.

Plaintiffs, in their trial petition, alleged that exclusion (c) was ambiguous. We see no difference in the *Ramsay* case, where

the Supreme Court held that the term "commercial automobile" was ambiguous "when the term is applied to a Navy-owned truck", and this case, when the term "use" is applied to an aircraft that is owned and operated by an independent contractor and is engaged in aerial spraying of the insureds' crop.

As stated by the Supreme Court in *Ramsay*, under the aforesaid well settled rules of law, we are compelled to affirm the trial court's judgment in favor of plaintiffs, the insureds. All of defendant's points have been carefully considered and they are overruled.

The judgment of the trial court is AFFIRMED.