827 P.2d 478

**Ronald Joseph DINOCENZO, Plaintiff/Appellant,**

**v.**

**William James AITKEN, as representative of those Underwriters at Lloyds, London and insurance companies subscribing to Insurance Policy Number 84–X0187, Defendants/Appellees.**

No. 2 CA–CV 91–0146.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 14, 1991.

Reconsideration Denied Dec. 11, 1991.

Review Denied April 21, 1992.

Miller, Pitt & McAnally by Philip J. Hall and Jonathan Reich, Tucson, for plaintiff/appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth, & Beshears by W. Lloyd Benner, Phoenix, and Adler, Kaplan & Begy by Richard F. Baylaender and John B. Austin, Chicago, for defendants/appellees.

OPINION

LIVERMORE, Chief Judge.

Cargomaster, an air cargo carrier operating from the Anchorage, Alaska airport, was insured by defendant Underwriters at Lloyds, London. At issue in this case is whether a Lloyds policy provided coverage for an injury caused plaintiff Ronald Dinocenzo by Cargomaster's negligent maintenance of a C–133 carcass at a location in the Arizona desert. The trial court found that it did not. We disagree and reverse.

The Lloyds policy titled "Aviation Premises Liability" provided coverage for bodily injury

(a) in or about the premises specified in the Schedule, as a direct result of the services granted by the Assured.

(b) Elsewhere in the course of any work or of the performance of any duties carried out by the Assured or his employees in connection with the business or operations specified in the Schedule

caused by the fault or negligence of the Assured or any of his employees engaged in the Assured's business or by any defect in the Assured's premises, ways, works, machinery or plant used in the Assured's business.

The policy contained an exclusion for

(c) Any Ships, Vessels, Craft or Aircraft owned, chartered, used or operated by or on account of the Assured but this exclusion shall be deemed not to apply to aircraft owned by others which are on the ground and for which indemnity is otherwise granted under Section 2 of this Policy, whether such Section is insured hereunder or not.

We must decide if the trial court correctly concluded that a C-133 carcass which consisted of a damaged fuselage without wings, engines, or instruments and with only a partial tail assembly and which was maintained solely as a source of spare parts for C-133s operated by Cargomaster was an "aircraft" within the meaning of the exclusion.

■ The parties are agreed that Alaska law governs the interpretation of the insurance contract and that such law requires that the policy be construed to provide the coverage a layman would reasonably have expected from a lay interpretation of policy language with ambiguities to be resolved against the insurer. *Weaver Brothers, Inc. v. Chappel*, 684 P.2d 123 (Alaska 1984); *Starry v. Horace Mann Insurance Co.*, 649 P.2d 937 (Alaska 1982). The policy containing no definition of "aircraft," we start with its dictionary definition as "any machine or device, including airplanes, helicopters, gliders, and dirigibles capable of atmospheric flight." American Heritage Dictionary 27 (1969). While we have no doubt that the C-133 in issue here was once an aircraft, we believe that it ceased to be so when it was rendered incapable of flight and kept only as a source of spare parts. A component, even a major component, of an item is not the item itself. A fuselage before assembly with other components would hardly be termed an "aircraft"; we see no reason to distinguish a fuselage after it has been disassembled from those same components. That interpretation also squares with the policy terms "chartered," "operated," and "used." All these look to future operation as an aircraft. One would not charter, operate, or use an inert hulk kept as a source of spare parts. See generally *Jiles v. Federal Barge Lines, Inc.*, 365 F.Supp. 1225 (E.D.La.1973); *Modern Air Transport, Inc. v. Pacific. Airmotive Corp.*, 20 N.J.Super. 609, 90 A.2d 108 (1952); *Naranjo v. Southwest Independent School District*, 777 S.W.2d 190 (Tex.App.1989).

■ Lloyds argues by way of cross-appeal that even if the carcass was not an aircraft coverage would still not exist because the accident was not on premises in Alaska and Cargomaster's maintenance of the carcass was not in connection with its business. We find these arguments meritless. The policy provides coverage not only at Cargomaster's scheduled Alaska premises but also "elsewhere." The maintenance of spare parts for Cargomaster's airplanes is surely a part of its business or operations as a cargo carrier and hangar keeper as contemplated in the policy.

Reversed. Appellant is awarded attorney fees on appeal in an amount to be determined upon filing the statement required by Ariz.R.Civ.App.P. 21, 17B A.R.S.

LACAGNINA, P.J., and HOWARD, J., concur.